IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY WAYNE EARLS<br>*Petitioner*, | : | |
| v. | : | CIVIL ACTION<br>NO. 18-1552 |
| SUPERINTENDENT SCI –<br>HUNTINGDON; ATTORNEY GENERAL<br>OF PA; THE ATTORNEY GENERAL OF<br>THE STATE OF PENNSYLVANIA; and,<br>DISTRICT ATTORNEY'S OFFICE OF<br>DELAWARE COUNTY, PA[1]<br>*Respondents*. | :<br><br>: | |

## MEMORANDUM

**Jones, II  J.**                                                           **November 25, 2019**

## I.      Introduction

On November 19, 2010, Petitioner Anthony Wayne Earls ("Petitioner") was convicted in

the Delaware County Court of Common Pleas of first degree murder, conspiracy to commit first

degree murder, carrying a firearm without a license, and possession of an instrument of crime.

(No. CP-23-CR-0004736-2009; Trial Tr. 82-83, Nov. 19, 2010.) On February 11, 2011,

Petitioner was sentenced to a term of life imprisonment without the possibility of parole for first

degree murder; as well as a consecutive term of 240 to 480 months' imprisonment for

conspiracy; a consecutive term of 30 to 60 months' imprisonment for carrying firearms without a

license; and, a concurrent term of 9 to 36 months' imprisonment for possession of an instrument

of crime. (Ct. Com. Pl. Crim. Docket 3-4, 11.)

Petitioner now seeks habeas relief from his state court convictions. Pursuant to Local

Civil Rule 72.1.IV(c), the matter was referred to United States Magistrate Judge Timothy R. Rice

---

[1]  This Court presents the caption exactly as it appears on the docket.

for a Report and Recommendation ("R&R"). Judge Rice issued an R&R denying Petitioner's request for relief (ECF No. 11), in response to which Petitioner filed Objections. (ECF No. 16.) For the reasons set forth below, Petitioner's Objections shall be overruled.

## II.    History

### A.    Factual Background

The following facts are supported by evidence presented at trial:

On March 19, 2009, two masked individuals entered Gino's Pizza in Chester, Pennsylvania and opened fire. (Trial Tr. 55, Nov. 12, 2010.) Fard Simms was shot and killed. (Trial Tr. 55-56, Nov. 12, 2010.) On August 6, 2009, after a witness claimed Petitioner had confessed to the crime and another witness identified him as one of the shooters, a warrant was issued for Petitioner's arrest. (Trial Tr. vol. 2 186, 214, 234-36, Nov. 16, 2010.) Petitioner was arrested on June 16, 2010 and was charged with murder, conspiracy, carrying a firearm without a license, and possession of an instrument of crime via Information filed on September 8, 2010. (App. Vol. 1 at 43, 47-55.)

On October 8, 2010, Petitioner motioned to have his case severed from that of his co-defendant, Charles Smith. (App. Vol. 1 at 57-65.) The Severance Motion was grounded in concerns about the testimony of Braheem Scott, a witness who alleged that Smith had confessed to the murder in two separate conversations between the men. (App. Vol. 1 at 67 n.3.) In the first conversation, Scott alleged Smith told him that both he and Petitioner had shot the victim. In the second, Scott alleged Smith stated he shot the victim and Petitioner fled the area immediately prior to the shooting. (App. Vol. 1 at 67 n.3.)

In his Motion for Severance, Petitioner argued that Scott's statements were inconsistent and only admissible in Smith's trial because under Pennsylvania law, while any reference to

Petitioner that inculpated him in Scott's *first* statement would be subject to redaction, the references to Petitioner in the *second* statement would not. (App. Vol. 1 at 60-61.) As such, Petitioner argued that he would be prejudiced by the statements, as the unredacted second statement would serve to reveal that he was the alleged co-shooter referenced in the first statement. Petitioner believed this would violate both his right to confront witnesses and his right to a fair trial. (App. Vol. 1 at 61.) Petitioner's counsel, William Wismer, subsequently withdrew that Motion after the state agreed to redact both of Scott's statements to avoid any mention of Petitioner. (App. Vol. 1 at 67.)

Before Petitioner's case proceeded to trial, the District Attorney offered him a plea deal. (Trial Tr. 14, Nov. 15, 2010.) Although Wismer initially misunderstood the applicable sentencing guidelines and misinformed Petitioner when they discussed the terms of the plea deal, Wismer subsequently discussed the accurate sentencing guidelines with Petitioner. (Trial Tr. 14-17, Nov. 15, 2010.) Petitioner elected to reject the plea offer, and in so doing, he informed the court that he believed he had had a "full and fair opportunity to talk privately to Mr. Wismer" about the plea offer and its various consequences, and that he was satisfied with Wismer's representation. (Trial Tr. 15-21, Nov. 15, 2010.)

During the trial, which began in November 2010, the Commonwealth presented various witnesses who testified to seeing two shooters enter Gino's Pizza. (Trial Tr. vol. 1, 12, 83-86, 155-57, Nov. 16, 2010) The Commonwealth also presented Scott as a witness, and he testified that Petitioner's co-defendant, Smith, said an "other person" accompanied Smith and "also pulled a gun out and also started shooting." (Trial Tr. vol. 1, 89-90, Nov. 16, 2010.) While Scott was cross-examined by Smith's counsel, Wismer did not cross-examine Scott. (Trial Tr. vol. 1, 95-122, 132, Nov. 16, 2010.)

Shreeda Dawson, Smith's ex-girlfriend, was also a witness for the Commonwealth. Dawson testified to separate conversations she allegedly had with both Smith and Petitioner, wherein they both confessed to being involved with the shooting at Gino's. (Trial Tr. vol. 2, 186, 235-41, Nov. 16, 2010.) Dawson testified that Smith told her he had shot someone at Gino's. (Trial Tr. vol. 2, 186, Nov. 16, 2010.) Dawson testified that a few days later, after Smith had been arrested, she took a car ride with Petitioner and he asked her why Smith had been arrested. (Trial Tr. vol. 2, 219-220, Nov. 16, 2010.) During her testimony about her conversation with Petitioner, Dawson mentioned Smith by name, even though her testimony was only to be offered against Petitioner. (Trial Tr. vol. 2, 219-220, Nov. 16, 2010.) The jury was then excused, and the court directed Dawson as follows:

> Ms. Dawson, as I believe you discussed previous[ly] with Mr. Miller, with regard to certain testimony there's things you're permitted to say and other things you aren't permitted to say. . . . In recounting conversations you supposedly had with Mr. Earles [sic], you are not in any way, shape or form to refer to Mr. Smith, be it as Mr. Smith, be it as Charles, be it as Chuck, be it as Gees . . . and any other way. Do you understand this? . . . If answering requires you to note mention of another person, you are to refer to such just as that, the other person. You understand?

(Trial Tr. vol. 2, 228-29, Nov. 16, 2010.) Dawson agreed. (Trial Tr. vol. 2, 229, Nov. 16, 2010.) She then testified that Petitioner told her he was at Gino's "with another individual and that. . . . him and the individual shot the victim." (Trial Tr. vol. 2, 235-36, Nov. 16, 2010.) The prosecutor asked how Petitioner was involved in the murder, and Dawson said that "[h]is involvement was that he shot the victim because the victim stole his car." (Trial Tr. vol. 2, 240-241, Nov. 16, 2010.)

During his closing statement, the District Attorney referenced Dawson's testimony and said: "I don't know why [Smith and Petitioner] felt the need to get down on their knees and confess. But just because these two guys are stupid and they both confessed to [Dawson] doesn't mean she's lying." (Trial Tr. 178, Nov. 18, 2010.)

The jury ultimately returned a guilty verdict for both Petitioner and Smith. (Trial Tr. 82-83, Nov. 19, 2010.) Petitioner was sentenced to life imprisonment in February 2011. (Ct. Com. Pl. Crim. Docket at 3-4, 11.) Petitioner subsequently moved for a new trial, as well as Judgment of Acquittal and/or Arrest of Judgment, arguing the verdict was against the weight of the evidence and that the court abused its discretion by: (1) granting the Commonwealth's Motion *in Limine* permitting the introduction of evidence that was related to Petitioner being a victim of robbery; and, (2) charging the Jury regarding flight as consciousness of guilt. (App. to Resp't's Br., Vol. 1 at 73-75.) The court denied his post-trial motion on July 15, 2011. (App. to Resp't's Br., Vol. 2 at 5-6.)

## B. Procedural Background

### i. Direct and Collateral Appeals

Petitioner filed a direct appeal of his conviction in July 2011, arguing that the jury's guilty verdicts were against the weight of the evidence, and that the trial court had abused its discretion by failing to grant him a new trial. *Commonwealth v. Earls*, 1982 EDA 2011, at 6 (Pa. Super. Ct. Jan. 19, 2012). The Superior Court affirmed his conviction and the Pennsylvania Supreme Court subsequently denied review in May 2013. *Commonwealth v. Earls*, 68 A.3d 907 (Pa. 2013).

In January 2014, Petitioner filed a *pro se* petition for relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. §§ 9541, *et seq.* ("PCRA") raising multiple claims of trial counsel ineffectiveness. (Ct. Com. Pl. Crim. Docket at 16.) The PCRA Court appointed counsel to represent Petitioner; however, appointed counsel ultimately filed a *Turner/Finley* "no-merit" letter and sought permission to withdraw from the case. (App. to Resp't's Br., Vol. 4, ECF 10-5, at 33-50.) Petitioner then sought permission to proceed *pro se* and filed an amended petition in

March 2016. (Ct. Com. Pl. Crim. Docket at 18.) In October 2016, the PCRA Court denied the

petition, finding all of Petitioner's claims meritless. (Ct. Com. Pl. Crim. Docket at 18.) Although

Petitioner filed a notice of Appeal,  he failed to file a Statement of Matters Complained of on

Appeal pursuant to Pa. R.A.P. 1925(b) ("1925(b) Statement") as ordered by the PCRA Court.

*Commonwealth v. Earls*, 175 A.3d 375 (Pa. Super. Ct. 2017). In July 2017, the Superior Court

affirmed the PCRA Court's finding that Petitioner waived all his claims based on his failure to

file a 1925(b) Statement. *Commonwealth v. Earls*, 3408 EDA 2016, PRCA App. Dkt. at 4. The

Pennsylvania Supreme Court denied Petitioner's request for review in March 2018.

*Commonwealth v. Earls*, 182 A.3d 449 (Pa. 2018). In April 2018, Petitioner timely filed the

instant habeas petition. (Habeas Pet., ECF 1.)

### ii.    Habeas Petition

In accordance with 28 U.S.C. § 2254, Petitioner timely filed a *pro se* habeas action in

federal court on April 12, 2018 ("Petition"), alleging the following instances of ineffective

assistance of counsel:

1.    Failure to cross-examine Scott and failure to object to the redacted
      testimony offered at trial;

2.    Failure to sever Petitioner's trial from that of his co-defendant, Smith;

3.    Failure to adequately prepare for Petitioner's trial;

4.    Failure to inform Petitioner about the details of the plea deal offered by
      the District attorney;

5.    Failure to move for a mistrial after Dawson broke the redaction
      agreement; and,

6.    Failure to object to prosecutorial misconduct, or the prosecution's use of
      two conflicting theories of the crime.

(Pet. 5-12.)

In response, the Delaware County District Attorney argued that Petitioner's claims were procedurally defaulted by virtue of Petitioner's failure to file a 1925(b) Statement with the PCRA Court and by virtue of the Superior Court having deemed his claims waived on appeal. In addition, the District Attorney argued that notwithstanding the procedural default, all of Petitioner's claims were meritless.

Upon review of Petitioner's claims in conjunction with the record, United States Magistrate Judge Timothy R. Rice issued an R&R, in which he recommended dismissal of all claims presented by Petitioner. As referenced above, Petitioner has objected to Judge Rice's R&R, and the Commonwealth has responded to Petitioner's Objections. The matter is now ripe for review by this Court.

## III.    Standards of Review

### A.    Objections to Report and Recommendation

When objections are filed to the R&R of a Magistrate Judge, the district court must conduct a *de novo* review of those portions of the R&R to which objections are made. 28 U.S.C. §636(b)(1). If there are no objections to the R&R, or when reviewing those portions of the R&R to which no objections are directed, the court, as a matter of good practice, should "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also Oldrati v. Apfel,* 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection . . . this Court will review [the Magistrate's] Report and Recommendation for 'clear error.'") (citations omitted).

### B.    Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state or federal custody to file a petition in a

federal court seeking the issuance of a writ of habeas corpus. In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody. *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

By means of the AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied in order for a prisoner to prevail on a habeas petition. These procedures were enacted to support the policy of creating finality with respect to state and federal criminal prosecutions. One such gate-keeping procedure is the requirement of exhaustion. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court.") (citing 28 U.S.C. § 2254(b)(1)). To accomplish this, federal habeas claims must first be "fairly presented" to the state courts. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted). A claim is deemed "fairly presented" when its "factual and legal substance" is put before the state courts "in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). The burden of proving exhaustion always rests with the petitioner. *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in state court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or, that (b) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, the "prejudice" element requires the "petitioner [to] prove 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 193 (quoting (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). In order to establish a fundamental miscarriage of justice under the second alternative, Petitioner must demonstrate actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

### C.    Merits Review

Where Petitioner's claims were adjudicated on the merits in state court, the AEDPA deference standard applies to this Court's review of the merits determination. *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012). The AEDPA limits federal habeas review of state court judgments. *Werts*, 228 F.3d at 195. A petition for habeas corpus may only be granted if: (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or, if (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d)(1)-(2). "While a factual determination by a state court is presumed to be correct under 28 U.S.C. § 2254(e)(1), a petitioner may rebut this presumption by clear and convincing evidence." *Sileo v. Rozum*, Civ. No. 12-3803, 2015 U.S. Dist. LEXIS 158463, at *52 (E.D. Pa. Nov. 23, 2015). Additionally, when a claim has been adjudicated on the merits in state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

       **D.**        **Ineffective Assistance of Counsel**

       The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove that counsel was ineffective, Petitioner must establish: (1) counsel's performance was constitutionally deficient; and, (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Prejudice requires a showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

## IV.    Discussion

### A.    Petitioner's Failure to File a 1925(b) Statement of Matters Complained of on Appeal

Petitioner argues his failure to comply with the PCRA Court's Order directing him to file a 1925(b) Statement was due to the fact that he never received the Order. (Pet'r Obj. 5-6.) Petitioner maintains he only received Orders granting his Motion to proceed *in forma pauperis* ("IFP") and his request for the transcript from his trial, and thus "this is a case of human error by the Clerk of the Court." (Pet. 20-21.) As a result, Petitioner argues that "although [he] presented the claims raised in [his] 28 U.S.C. § 2254 Habeas Corpus Petition to every State Court the State Courts refused to address the merits of the claims . . . [and] this Court should conduct a complete de novo review of the claims presented." (Pet. 47, Obj. 5.)

### 1.    Petitioner's Claims Are Procedurally Defaulted

Petitioner's claims are procedurally defaulted.  A state prisoner seeking federal habeas relief must first exhaust all available state court remedies "thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan*, 513 U.S. at 365).  Federal habeas review is barred "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. Thus, "when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule," it is considered procedurally defaulted. *Rolan*, 680 F.3d at 317 (citing *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)).

This procedural bar applies only "if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment."  *Nara v Frank*, 488 F.3d 187, 199 (3d Cir. 2007) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). A state

rule is said to provide an adequate and independent basis for barring federal review when: "(1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) their refusal was consistent with other decisions." *Id.* (citing *Bronshtein v. Horn*, 404 F.3d 700, 708 (3d Cir. 2005)). The state bears the burden of demonstrating that a petitioner's claims are procedurally defaulted. *Id.* If the state carries its burden, the court may still consider a procedurally defaulted claim if a petitioner can show either: (1) both a legitimate cause for the default *and* actual prejudice from the alleged constitutional violation; or (2) that a fundamental miscarriage of justice would occur from the court's failure to review the claim. *Coleman*, 501 U.S. at 750.

Pennsylvania Rule of Appellate Procedure 1925(b) establishes that a court "may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal[.]" It further provides that any issues not raised in such a statement are considered waived. Pa. R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Daniels,* 185 A.3d 1145, 2018 Pa. Super. Unpub. LEXIS, at *2 (Pa. Super. Feb. 26, 2018) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."). However, if an appellant can demonstrate that he "was not served with notice of the trial court's . . . order directing him to file a 1925(b) Statement within fourteen days, [he] cannot be penalized for failing to file a timely 1925(b) Statement" and his claims are not deemed waived. *Commonwealth v. Hess*, 810 A.2d 1249, 1255 (Pa. 2002).

Here, the PCRA Court found Petitioner's claim that he never received the 1925(b) Order to be without merit:

> The Delaware County Office of Judicial Support (Clerk of Courts) complied with Pennsylvania Rule of Criminal Procedure 114 in timely forwarding on November 2, 2016, the self-represented Defendant a copy of the court's order of October 28, 2016, requiring him to lodge a concise statement. The

> Defendant was served with a copy of the order by First Class Mail addressed
> to him at his place of confinement, SCI Huntingdon. A corresponding
> docket entry dated November 2, 2016, was made noting this order's
> (October 28, 2016) date and manner of service. . . . Clearly, the Defendant
> timely received copies of the court's order directing him to lodge a
> statement of matters complained of on appeal.

*Commonwealth v. Earls*, 3408 EDA 2016, PRCA App. Dkt. at 11 (internal citations omitted).

The Superior Court ultimately held that Petitioner had failed to establish a *prima facie* case that the Clerk of Court had failed to provide him with notice of the need to file a 1925(b) Statement, and affirmed the PCRA Court's decision. *Commonwealth v. Earls*, 175 A.3d 375 (Pa. Super. Ct. 2017). In support of its holding, the Superior Court relied on both the docket entries and Petitioner's acknowledgment that he had received the court's IFP Order, noting that "in footnote 2 of that order, the PCRA Court indicated that '[p]er a separate order of this same date (October 28, 2016), this court directed [Earls] to lodge a concise statement of matters complained of on appeal no later than twenty-one (21) days subsequent.'" *Id.* As such, the Superior Court found that the IFP Order put Petitioner on notice that the PCRA Court had issued an Order directing him to file a 1925(b) Statement. *Id.* Thus, because a federal habeas court may not "reexamine state-court determinations on state-law questions[,]" this Court is bound by the state court's determination that Petitioner waived his claims, and therefore finds they are procedurally defaulted. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### 2. None of the Exceptions to the Procedural Default Doctrine Are Applicable to Petitioner's Case

In his objections to the R&R, Petitioner seems to argue that even if his claims are procedurally defaulted, this Court should examine them on the merits because he "suffered severe prejudice when the PCRA Court failed to" send him an Order regarding a 1925(b) Statement, and "he is actually innocent[.]" (Pet'r Obj. 1-5.) While Petitioner does not explicitly

say so, it appears he is arguing that because he is actually innocent, it would be a fundamental miscarriage of justice if his claims were not reviewed. This Court does not agree.

In order for a federal habeas court to hear an otherwise procedurally defaulted claim, a petitioner must be able to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the court's failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime . . . by presenting new evidence of innocence." *Keller v. Larkins*, 251 F.3d 408, 415-16 (3d Cir. 2001) (citations omitted). Petitioner has not presented any new evidence to this Court, and it therefore finds that the miscarriage of justice exception to the procedural default doctrine does not apply.

### B.      Sufficiency of Objections

Although courts must give liberal construction to *pro se* habeas petitions, "[o]bjections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to de novo review." *Gray v. Delbiaso*, Civ. No. 14-4902, 2017 U.S. Dist. LEXIS 101835, at *11 (E.D. Pa. Jun. 30, 2017); *see also Rainey v. Varner,* 603 F.3d 189, 198 (3d Cir. 2010) (noting deferential interpretation given to *pro se* petitions). "Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled." *Prout v. Giroux*, Civ. No. 14-3816, 2016 U.S. Dist. LEXIS 57085, at *30 (E.D. Pa. Apr. 29, 2016). Thus, this Court finds the following objections must be summarily overruled as non-responsive to Judge Rice's R&R: (1) counsel's failure to cross-examine Scott regarding his redacted statement; (2) counsel's failure to sever Petitioner's trial from Co-defendant Smith; (3)  counsel's failure to adequately prepare for

Petitioner's trial by not obtaining a ballistics expert; (4) counsel's failure to adequately prepare for Petitioner's trial by not conducting an adequate investigation; and, (5) counsel's failure to object to a statement made during the prosecution's closing statement that appeared to bolster Dawson's credibility. Accordingly, said issues are not entitled to *de novo* review.

### C.      Petitioner's Remaining Objections Are Meritless

*Assuming arguendo* Petitioner's claims are not procedurally defaulted, this Court concludes the remaining, properly-lodged objections are without merit. Petitioner alleges various instances of ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. If a petitioner cannot meet both the deficiency and prejudice prongs of *Strickland*, it cannot be said that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. Judicial scrutiny of counsel's performance is highly deferential, and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

If the state court has already addressed a petitioner's ineffectiveness claims, in order to prevail on his federal habeas claims, s/he must show "that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). The "unreasonable" standard is different from an "incorrect" standard, and "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002). Whether a state

court's application of *Strickland* is objectively unreasonable depends on the facts of the individual case. *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

For the reasons that follow, this Court finds that Petitioner's surviving objections regarding ineffective assistance of counsel claims do not satisfy both prongs of *Strickland*.

### 1. Counsel's Failure to Move for a Mistrial Based Upon Redaction

Petitioner objects to Judge Rice's finding that counsel was not ineffective for failing to object to the method used for redaction of Scott's statements, which Petitioner claims resulted in a violation of his "right to confront witnesses." (Pet'r Obj. 6.)

A person's rights under the Confrontation Clause are implicated when "a contested statement by an out-of-court declarant qualifies as testimonial[.]" *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir, 2012). It is well settled that:

> Testimonial statements for Confrontation Clause purposes include statements a declarant made with an intent to incriminate, statements made with the anticipation that the person to whom the declarant made the statement would be called to testify, formal statements under oath, and statements made in response to law enforcement interrogation seeking information about a past event.

*Waller v. Varano*, 562 F. App'x 91, 92 n.2 (3d Cir. 2014).

In this case, the statement at issue was made by Smith to Scott while the two men were in prison and cannot be deemed "testimonial." *See Berrios*, 676 F.3d at 128 ("In the present case, the contested statements bear none of the characteristics exhibited by testimonial statements. There is no indication that Berrios and Moore held the objective of incriminating any of the defendants at trial when their prison yard conversation was recorded; there is no indication that they were aware of being overheard; and there is no indication that their conversation consisted of anything but 'casual remark[s] to an acquaintance.'") (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)). Judge Rice was correct in his assessment and ultimate conclusion that no

Confrontation Clause violation occurred, and there was therefore no basis for counsel to object. Accordingly, this objection by Petitioner is without merit.

### 2. Counsel's Failure to Adequately Explain the Plea Deal to Petitioner

Petitioner next alleges that Wismer was ineffective because he "misunderstood the sentencing offer" and therefore did not explain it well, which in turn caused Petitioner to be confused. (Pet'r Obj. 13.) Petitioner maintains that because Wismer did not adequately explain the terms of the plea offer, nor provide Petitioner with "reliable sentencing exposure information and could not assure Petitioner of what his sentencing exposure would be[,]" he was unable to make "a well thought out decision" about whether to accept the plea deal. (Pet. 43, Pet'r Obj. 14.)

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In order to prevail on an ineffective assistance of counsel claim in the context of a rejected plea deal, a petitioner must show that but for his counsel's ineffective advice "there is a reasonable probability that the plea offer would have been presented to the court[,] . . .that the court would have accepted its terms," and that the conviction or sentence issued under the plea term's would have been less severe than those that were ultimately imposed after a trial. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Thus, "[h]aving to stand trial, not choosing to waive it, is the prejudice alleged." *Id.* at 163-64. Where a defendant is represented by counsel during the plea process and rejects a plea after consulting with counsel, counsel's effectiveness depends on whether his advice "'was

within the range of competence demanded of attorneys in criminal cases.'" *See Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In this case, the PCRA Court found Petitioner's ineffectiveness claim regarding the plea to be meritless. This finding is supported by the record:

> THE COURT:     All right. And Mr. Earls, could you stand for a moment, please? Mr. Earls, you've had an opportunity to discuss privately with Mr. Wismer the Commonwealth's guilty plea offer as Mr. Miller indicated to us some moments ago?
>
> MR. EARLS:      Yes.
>
> THE COURT:     All right. Would you like any more time to further discuss privately with Mr. Wismer any . . .
>
> MR. EARLS:      No thank you. . . .
>
> THE COURT:     All right. Do you believe you've had a full and fair opportunity to talk privately to Mr. Wismer about the various consequences of the Commonwealth's guilty plea offer?
>
> MR. EARLS:      Yes.
>
> THE COURT:     You certainly, I hope, are aware that if the matter proceeds to a jury trial and the Commonwealth can convince the jury beyond a reasonable doubt you are guilty of First Degree Murder, there is a mandated life sentence without parole and you understand this?
>
> MR. EARLS:      Yes.
>
> THE COURT:     You equally understand that under the terms of the offer the Commonwealth has put forward there is not a mandatory life sentence; not to minimize the time involved, it's appreciable, but it's not life. Do you understand that?
>
> MR. EARLS:      Yes.
>
> THE COURT:     Is there anything in the course of being your attorney that you asked Mr. Wismer to do that he refused to do or didn't do?

| MR. EARLS: | No. |
|---|---|
| THE COURT: | Is there anything in the capacity as your lawyer that for whatever the reason, you asked Mr. Wismer to do or not to do and he ignored you and went ahead and did anyway? |
| MR. EARLS: | No. |
| THE COURT: | As you stand here this afternoon, you are satisfied with Mr. Wismer being your attorney? |
| MR. EARLS: | Yes. |
| THE COURT: | With regard to the Commonwealth's guilty plea offer, what you and I have just gone over, and your related private discussions with Mr. Wismer, do you have any questions you would want to ask me? |
| MR. EARLS: | No sir. |
| THE COURT: | Do you have any questions that you need to discuss privately with Mr. Wismer? |
| MR. EARLS: | No sir. |
| THE COURT: | And I'm given to understand in light of everything we've gone over [and] your private discussions with Mr. Wismer, you would like to continue with the jury trial, correct? |
| MR. EARLS: | Yes, sir. |
| THE COURT: | Mr. Earls, thank you very much. |

(Trial Tr. 18-21, Nov. 15, 2010.)

This Court does not find that the PCRA Court's decision was an objectively unreasonable application of *Strickland*. The record speaks for itself. Moreover, Petitioner makes no showing that he would have accepted the plea but for Wismer's failure to better explain its terms,[2] that the

---

[2] Again, the record reflects that Wismer *did* inform Petitioner of the sentencing implications of rejecting the plea deal, as did the trial court. (*See generally* App. to Resp't's Br., Vol. 4 at 112-13.)

court would have accepted it, or that the terms of the plea offer would have been more favorable to him. (Pet. 42-44.) This Court therefore finds that Petitioner's claim is meritless, and that the state court did not unreasonably apply *Strickland*.

### 3. Counsel's Failure to Move for a Mistrial

Lastly, Petitioner claims Wismer was ineffective because he did not move for a mistrial after Dawson broke the redaction agreement and used Smith's name rather than "the other person" during her testimony about Petitioner's alleged confession. (Pet'r Obj. 14, Pet. 45 (citing Trial Tr. vol. 2, 220, Nov. 16, 2010).) Specifically, Petitioner argues that Dawson's statement "He wanted to know if [the shooting at Gino's] was what Mr. Smith was arrested for[,]" was grounds for a mistrial because it impermissibly linked him and Smith and violated his right to confrontation. (Pet. 44.) Immediately after Dawson made this statement, the trial court excused the jury and reminded Dawson of the importance of maintaining the redaction agreement. (Trial Tr. vol. 2, 228-30, Nov. 16, 2010.) The court also told defense counsel it would provide the jury with "a cautionary instruction consistent with the intended final charge that a statement uttered by an accused must only be considered as evidence against that person" but both defense attorneys declined the curative instruction. (App. to Resp't's Br., Vol. 4 at 118 (citing Trial Tr. vol. 2, 231-32, Nov. 16, 2010).) In her subsequent testimony, Dawson made no further direct references to Smith. (Trial Tr. vol. 2, 233-319, Nov. 16, 2010.)

As such, Judge Rice found that the state courts had not misapplied *Strickland* because Petitioner's claim was meritless, as Dawson's isolated comment did not necessitate a mistrial. (R&R 21). Accordingly, Judge Rice found "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument[.]" (R&R 21 (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).) Petitioner fails to explain how Judge

Rice erred in his finding that moving for a mistrial would have been futile; he merely makes conclusory statements. (Pet'r Obj. 14 ("Without doubt the Petitioner Earls suffered serious prejudice because" counsel did not move for a mistrial).) His objection is overruled for this reason. *Guzman v. Rozum*, Civ. No. 13-7083, 2017 U.S. Dist. LEXIS 55661, at *22 (E.D. Pa. Apr. 12, 2017).

**V.      Conclusion**

For the reasons set forth hereinabove, Petitioner's Objections shall be overruled.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones,  J.